CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JAN 25 2018
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 4:04-cr-00008-1 |
| | ) | |
| v. | ) | **2255 MEMORANDUM OPINION** |
| | ) | |
| JESSIE BEN HAIRSTON, | ) | By: Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Petitioner. | ) | |

Jessie Ben Hairston, a federal inmate, filed a motion and supplemental motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The government filed a motion to dismiss, and Hairston respond, making this matter ripe for consideration. After reviewing the record, I will grant Hairston's § 2255 motion and deny the government's motion to dismiss.

**I.**

On April 21, 2005, a federal grand jury charged Hairston and two codefendants in a multi-count superseding indictment with various firearm and drug-related crimes. He pleaded guilty, pursuant to a written plea agreement, to one count of conspiracy to possess a firearm while being an unlawful user of a controlled substance and making false statements to an authorized gun dealer, in violation of 18 U.S.C. §371; fourteen counts of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e); eight counts of distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) & 841(b)(1)(C); and two counts of using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Plea Agree. at 1-2, ECF No. 62.

The Presentence Investigation Report ("PSR") recommended that Hairston receive an enhanced sentence because he qualified as an armed career criminal under the Armed Career Criminal Act, ("ACCA"), 18 U.S.C. § 924(e). The PSR relied on the following five predicate

convictions to support Hairston's armed career criminal designation: (1) a 1979 New Jersey aiding and abetting armed robbery conviction; (2) a 1979 New Jersey robbery conviction; (3) a 1982 New Jersey first degree robbery conviction; (4) a 1989 New Jersey burglary conviction; and 1993 New Jersey third degree theft conviction. PSR ¶ 29, 30, 31, 35, 36.

On November 18, 2005, I adopted the PSR and sentenced Hairston to a total of 540 months' incarceration. Judgment at 3, ECF No. 130. This sentence was comprised of a 60-month sentence on Count One and a 180-month sentence on each of the fourteen firearm and eight drug counts, to be served concurrently; as well as a 60-month and a 300-month sentence for the two convictions for use of a firearm in relation to a drug trafficking offense, to be served consecutively to each other and to the sentences imposed for the other counts.

Hairston appealed, arguing that he was not advised that he faced an increased mandatory minimum sentence of fifteen years on the felon in possession of a firearm charges because of his status as an armed career criminal. On April 3, 2008, the United States Court of Appeals for the Fourth Circuit reversed and remanded. United States v. Hairston, 522 F.3d 336 (4th Cir. 2008).

On January 16, 2009, Hairston again pleaded guilty, pursuant to a written plea agreement, to the same counts: conspiracy to possess a firearm while being an unlawful user of a controlled substance and making false statements to an authorized gun dealer, in violation of 18 U.S.C. §371; fourteen counts of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e); eight counts of distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) & 841(b)(1)(C); and two counts of using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Plea Agree. at 1-2, ECF No. 199. The government filed a motion for substantial assistance, and both parties recommended a sentence of 180 months' incarceration. Id. at 5. I granted the motion and sentenced Hairston to

180 months, which was comprised of a 60-month sentence on Count One and concurrent 180-month sentences for all other counts. Judgment at 3, ECF No. 205. Hairston did not appeal.

In October 2015, I appointed the Federal Public Defender's Office to represent Hairston and provide briefing, if necessary, in light of the Supreme Court's recent decision in Johnson v. United States, ("Johnson II")[1], 135 S. Ct. 2551, 2563 (2015), pursuant to Standing Order 2015-5. The Federal Public Defender's Office filed a memorandum and amended memorandum in support. ECF Nos. 218, 224.

Hairston alleges that I imposed an unconstitutional sentence, in light of Johnson II, because he no longer qualifies as an armed career criminal. On January 9, 2018, I held a hearing to explore this issue. In light of the briefs and arguments made by counsel at the hearing, I agree with Hairston that he no longer has three predicate offenses following Johnson II. Accordingly, I will grant his petition.

## II.

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Hairston bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

### A. The ACCA Enhanced Sentence Structure

Hairston challenges the viability of the predicate offenses used to support his status as an armed career criminal. Federal law prohibits convicted felons from possessing firearms. 18

---

[1] I refer to the Supreme Court's most recent Johnson decision as "Johnson II" in order to avoid confusion because in this opinion I also must discuss a prior Supreme Court case, Johnson v. United States, 559 U.S. 133 (2010), which I will refer to as "Johnson I."

U.S.C. § 922(g). Defendants who violate this law are subject to a term of up to ten years' imprisonment. 18 U.S.C. § 924(a)(2). When defendants convicted of a § 922(g) charge have three or more prior convictions for "serious drug offenses" or "violent felonies," however, they qualify as armed career criminals under the ACCA. Armed career criminals face an increased punishment: a statutory mandatory minimum of fifteen years' imprisonment and a maximum of life. 18 U.S.C. § 924(e)(1).

In Johnson II, the Supreme Court invalidated part of the definition of "violent felony" under the ACCA. 135 S. Ct. at 2563. The ACCA defines a "violent felony" as:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that –
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). The Supreme Court reviewed the second part of subsection (ii) of the violent felony definition. It concluded that the clause, known as the "residual clause," which provides, "or otherwise involves conduct that presents a serious potential risk of physical injury to another," was unconstitutionally vague. 135 S. Ct. at 2563. The Supreme Court did not, however, strike down the other portions of the violent felony definition, which include subsection (i), known as the "force clause," and the first part of subsection (ii), delineating specific crimes, known as the "enumerated crimes clause." Johnson II, 135 S. Ct. at 2563 (noting that other than the residual clause, the Court's holding "d[id] not call into question. . . the remainder of the [ACCA's] definition of a violent felony"). In addition, the Johnson II decision did not disturb the ACCA's definition of "serious drug offenses" and had no effect on the

continued viability of drug convictions to act as predicates. The Supreme Court's decision in Johnson II announced a new rule of constitutional law that applies retroactively to cases on collateral review. Welch v. United States, 136 S. Ct. 1257, 1268 (2016).

**B. Timeliness and Waiver**

Hairston argues that he should no longer be classified as an armed career criminal, and should not be subjected to the concomitant fifteen-year mandatory minimum sentence for his § 922(g) convictions because he no longer has three qualifying predicate convictions. The government argues that I should not consider the viability of Hairston's predicate offenses because his petition is untimely and he waived the right to collaterally attack his sentence by signing his plea agreement. I disagree.

1. Timeliness

A petition under § 2255 must adhere to strict statute of limitations requirements. Generally, a petitioner must file a § 2255 motion within one year from the date on which his judgment of conviction became final. 28 U.S.C. § 2255(f)(1). However, the statute allows for an additional one-year limitations period from the date on which the Supreme Court recognizes a new right made retroactively applicable on collateral review if the defendant relies on that decision for relief. *Id.* at § 2255(f)(3).

Hairston filed this § 2255 motion on June 27, 2016, more than one year from the date of his final judgment in 2009. Accordingly, his motion is untimely under § 2255(f)(1). However, the Fourth Circuit has held that a § 2255 motion is timely if it is filed within one year of Johnson II and establishes that the sentence received "may have been predicated on application of the now-void residual clause and, therefore, may be [] unlawful." United States v. Winston, 850 F.3d 677, 682 (4th Cir. 2017). Hairston alleges that his predicate convictions for New Jersey

robbery, burglary, and theft-from-a-person convictions no longer qualify as violent felonies following Johnson II based, in part, on the now-unconstitutional residual clause. Amend. § 2255 Mot. at 1-2, ECF No. 224. Because Hairston's sentence may have been predicated on the residual clause, he has "shown that he relies on a new rule of constitutional law," such that he satisfies the requirements of 28 U.S.C. § 2255(f)(3) to allow this court to review the merits of his petition. Winston, 850 F.3d at 682 (internal quotation marks omitted). Therefore, I must conclude that Hairston's petition is timely under § 2255(f)(3) as he filed it within one year of the Supreme Court's decision in Johnson II, which issued on June 26, 2015. Id.

  2. Procedural Default

The government also claims that Hairston procedurally defaulted on these claims because he did not argue that the residual clause was unconstitutional on direct review, which usually precludes collateral review. Massaro v. United States, 538 U.S. 500, 504 (2003) (noting that claims not raised on direct appeal may generally not be raised on collateral review). However, the Fourth Circuit, in Winston, rejected the government's "various related procedural arguments," and reached the merits of the petition without further consideration of procedural bars. Id. at 682 n. 4.

Moreover, Hairston can demonstrate cause and actual prejudice to excuse the procedural default. Bousley v. United States, 523 U.S. 614, 622 (1998). A defendant can show cause to overcome a default when the Supreme Court establishes "a new constitutional rule, representing a clear break with the past," so that the legal basis for an argument was not reasonably available to counsel. Reed v. Ross, 468 U.S. 1, 17 (1984). This is such a case because at the time of Hairston's second sentencing, the Supreme Court had definitively rejected a vagueness challenge to the ACCA's residual clause in James v. United States, 550 U.S. 192, 210 n. 6 (2007) ("[W]e

are not persuaded . . . that the residual provision is unconstitutionally vague."). The Johnson decision expressly overruled James. Johnson, 135 S. Ct. at 2563 ("Our contrary holding[] in James . . . [is] overruled.").

Hairston has also established prejudice. Because of his ACCA designation, Hairston faced a mandatory minimum sentence of 180 months' incarceration on his § 922(g) counts. He, in fact, received concurrent terms of 180 months for all of his § 922(g) convictions, although his overall sentence was greatly reduced due to a downward departure based on substantial assistance. Therefore his sentence for those counts exceeds the statutory maximum allowed for a non-ACCA enhanced § 922(g) conviction, which is 120 months or ten years.

3. Waiver

In addition, the government also asserts that Hairston cannot collaterally attack his sentence because he agreed, in his plea agreement, to "waive any right [he] may have to collaterally attack, in any future proceeding, any order issued in this matter. . . ." Plea Agree. 2 at 8, ECF No. 199. Collateral attack waivers are generally enforceable, following a knowing and voluntary guilty plea. United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). I determined that Hairston's guilty plea, made in open court following a detailed plea colloquy, was knowingly and voluntarily made, and defense counsel does not argue otherwise. However, I conclude that Hairston's Johnson II claim falls beyond the scope of his collateral-attack waiver.

The Fourth Circuit has held that a valid waiver of appeal and collateral-attack rights does not give a district court unfettered discretion in imposing a sentence and that certain fundamental defects or errors fall into a class of claims that lie beyond the scope of any wavier. United States v. Martin, 961 F.2d 493, 496 (4th Cir. 1992). One such class of claims is if the sentence imposed is in excess of the maximum penalty provided by statute. Id. Hairston argues that his sentences

for his § 922(g) counts are in excess of that authorized by statute because I sentenced him above the ten-year maximum he would have faced without the ACCA enhancement. Because Hairston claims that he received a sentence above the statutory maximum, I concluded that his collateral attack waiver does not preclude further inquiry into his predicate offenses.

**C. Substantive Predicate Convictions**

I next turn to the predicate offenses that supported Hairston's status as an armed career criminal at the time of his second sentencing. The PSR noted five predicate offenses: a New Jersey aiding and abetting armed robbery conviction, a New Jersey first degree robbery conviction, a New Jersey robbery conviction, a New Jersey burglary conviction, and a New Jersey theft-from-a-person conviction. The ACCA requires only three prior convictions for a violent felony or serious drug offense, or both, to support an ACCA enhanced sentence. Therefore, Hairston must establish that three predicates are no longer viable in order to obtain relief, which he is able to do.

    1. <u>Categorical and Modified Categorical Review of Predicate Crimes</u>

In determining whether an offense qualifies as a "violent felony," a court must first employ an analysis known as the "categorical approach." Under this approach, a court must assess whether a crime qualifies as a violent felony by looking "only to the fact of conviction and the statutory definition of the prior offense" and not how a particular offender might have committed the crime on a particular occasion. <u>Taylor v. United States</u>, 495 U.S. 575, 602 (1990). In applying the categorical approach to a predicate crime listed in the enumerated crimes clause of the ACCA (i.e. burglary, arson, extortion, or explosives-related), I must determine whether the state crime, as set forth in the statute, aligns with the "generic" offense. <u>Descamps v. United States</u>, 133 S. Ct. 2276, 2283 (2013). If the state statute criminalizes the same conduct

or less conduct than that criminalized by the generic crime, then the conviction qualifies as an ACCA predicate. Id. However, if the state statute criminalizes conduct that falls outside of the crime in its generic form, then the conviction does not qualify as an ACCA predicate. Id. The categorical approach applies somewhat differently with regard to the force clause of the ACCA. In that situation, I must determine whether the state crime necessarily involves the use, attempted use, or threatened use of physical force against another person. United States v. Gardner, 823 F.3d 793, 801 (4th Cir. 2016). I must focus on "the minimum conduct necessary for a violation" of the statute under state law. Castillo v. Holder, 776 F.3d 262, 267 (4th Cir. 2015).

When a statute is divisible, that is, it sets forth multiple distinct crime, at least one of which, but not all, qualifies as a generic enumerated offense or requires the necessary force to satisfy the force clause, a court may apply a "modified categorical approach." Mathis v. United States, 136 S. Ct. 2243, 2249 (2016). The modified categorical approach allows me to look more closely at the defendant's particular criminal conduct in order to determine which of the alternate crimes set forth in the statute was the one for which the defendant was actually convicted. Id. In order to do so, I may consult a limited array of documents, including charging documents, plea agreements, transcripts of plea colloquies, among others. Shepard v. United States, 544 U.S. 13, 25 (2005) (plurality opinion).

    2. Theft From a Person Conviction

Hairston argues that his conviction for third-degree theft from a person, in violation of New Jersey statute § 2C:20-2(b)(2)(d), no longer qualifies as a predicate offense under the ACCA. At the January 9th hearing, the government conceded that this conviction does not qualify as an ACCA predicate. I agree with the parties.

At the time of Hairston's 1993 conviction, a defendant was guilty of theft from a person under New Jersey law if he "unlawfully t[ook], or exercise[d] unlawful control over, moveable property of another with purpose to deprive him thereof," N.J.S.A. § 2C:20-3(a), and the theft was from "the person of the victim," N.J.S.A. § 2C:20-2(b)(2)(d). This crime, which is not specifically listed in the enumerated crimes clause, could qualify as a violent felony only under the force clause of the ACCA. The Supreme Court has established that for a prior conviction to qualify as a violent felony under the force clause, it must criminalize conduct that involves "violent force—that is, force capable of causing physical pain or injury to another person" and which "connotes a substantial degree of force." Johnson I, 559 at 140.

However, the crime of theft from a person may be effectuated without resorting to violent force. See, e.g., State v. Powell, 440 A.2d 1377, 1379 (N.J. Super. 1981) (noting that a defendant may be found guilty of theft from a person in the third degree by receiving or possessing stolen goods). Accordingly, such a conviction does not fall within the force clause of the ACCA. See, e.g., United States v. Manning, 564 F. App'x 723, 727 (4th Cir. 2014) (unpublished) (noting that a conviction for New Jersey theft from a person did not qualify as a violent felony under the force clause because it "it does not have as an element the use, attempted use, or threatened use of physical force against the person of another") (internal quotation marks omitted). The Fourth Circuit previously concluded that such a conviction qualified as a violent felony under the residual clause, but following Johnson II, the residual clause may no longer be used to support an enhanced ACCA sentence. Id.

Although Hairston's prior conviction for theft from a person is no longer a violent felony for ACCA purposes, the inquiry does not end there. Because five predicate convictions were

used to support his status as an armed career criminal, he must establish that at least two additional predicates no longer qualify as violent felonies.

   3. <u>New Jersey Burglary</u>

Hairston also argues that his prior conviction for New Jersey burglary does not qualify as a violent felony under the enumerated crimes clause. At the January 9 hearing, the government admitted that current case law made it difficult to support an argument that a New Jersey burglary conviction continues to qualify as an ACCA predicate. I agree. The New Jersey burglary statute provided, at the time of Hairston's conviction in 1989:

> a. Burglary defined. A person is guilty of burglary if, with purpose to commit an offense therein he:
>    (1) Enters a structure, or a separately secured or occupied portion thereof, unless the structure was at the time open to the public or the actor is licenses or privileged to enter; or
>    (2) Surreptitiously remains in a structure or a separately secured or occupied portion thereof knowing that he is not licenses or privileged to do so.

N.J.S.A. § 2C:18-2 (1989). A separate statute defined the word "structure" as "any building, room, ship, vessel, car, vehicle or airplane, and also means any place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present." N.J.S.A. § 2C:18-1 (1989).

Although the ACCA lists burglary as one of the enumerated offenses, a defendant's prior conviction can qualify as a "burglary" under the ACCA only if it was a conviction for "generic burglary." In 1990, the Supreme Court concluded that "regardless of technical definitions and labels under state law," Congress "had in mind a modern 'generic' view of burglary" when it enacted the ACCA. <u>Taylor</u>, 495 U.S. at 589, 590. The Court went on to define generic burglary

as: "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Id. at 598.

While the New Jersey statute seems to track the generic definition of burglary, it is, in fact, broader than the generic definition. This is because the term "structure" was, and continues to be, defined as encompassing ships, vessels, cars, vehicles and airplanes. N.J.S.A. § 2C:18-1. The Taylor Court concluded that a Missouri burglary statute that similarly criminalized the breaking into places other than real property, such as boats, vessels and railroad cars, was broader than generic burglary. 495 U.S. at 599. The government does not seem to contest that the New Jersey burglary state is broader than generic burglary.

Moreover, the 1989 New Jersey burglary statute is not divisible into generic and non-generic burglary. Both subsections use the term "structure," with its expansive definition. Accordingly, it is not possible to parse the elements of the statute into separate generic and non-generic crimes; "a statute is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the statute may be divided constitutes, by its elements, a crime of violence." United States v. Cabrera-Umanzor, 728 F.3d 347, 352 (4th Cir. 2013); see also Descamps v. United States, 133 S. Ct. 2276, 2285 (2013) (explaining that the modified categorical approach allows a court to compare a prior conviction to the generic offense when the statute lists several different crimes and at least one, but not all, of those crimes matches the generic version).

Therefore, Hairston's burglary conviction, too, does not support his enhanced sentence as an armed career criminal. See United States v. Major, 693 F. App'x 267, 267-68 (4th Cir. 2017) (unpublished) (noting, with regard to a similar Virginia burglary statute, that because it was not divisible into generic and non-generic crimes, and because the statute criminalized conduct that

fell outside the scope of generic burglary, Virginia burglary convictions did not qualify as violent felonies and could not be used to enhance a defendant's sentence under the ACCA). Nonetheless, because Hairston has three prior convictions for New Jersey robbery, I must determine the viability of those ACCA predicates as well.

    4. <u>New Jersey Robbery</u>

Hairston has three prior New Jersey robbery convictions that were used to support his ACCA sentence. He has two convictions from 1979, when Hairston was 14 years old, one for aiding and abetting armed robbery and the other for robbery. In addition, he has a 1982 conviction for first degree robbery. I need not determine the viability, for ACCA purposes, of his aiding and abetting conviction and his first degree robbery conviction because I conclude that Hairston's 1979 robbery conviction cannot continue to support his ACCA-enhanced sentence.

Hairston's robbery conviction from 1979 appears to have been a second-degree offense without any enhancing circumstances. In 1979, the New Jersey robbery statute read:

> b. Robbery defined. A person is guilty of robbery if, in the course of committing a theft, he:
>    (1) Inflicts bodily injury; or
>    (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
>    (3) Commits or threatens immediately to commit any crime of the first or second degree.
> . . .
> c. Grading. Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury or is armed with, or uses or threatens the immediate use of a deadly weapon.

N.J.S.A. § 2C:15-1 (1979). In 1982, the definition was largely the same, except that subsection (1) included an additional "use of force" clause and instead read "[i]nflicts bodily injury or uses force upon another; or." N.J.S.A. § 2C:15-1 (1982).

Robbery, which is not included in the enumerated offenses of the ACCA, qualifies as a violent felony after Johnson II only if it falls within the "force clause," and "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(1). Again, the type of "physical force" employed must be "violent force . . . capable of causing physical pain or injury to another person." Johnson I, 559 U.S. at 140. In applying the categorical approach to this statute, I must determine whether New Jersey robbery necessarily requires the use, attempted use or threatened use of physical force, within the meaning of the ACCA, by focusing on "the minimum conduct necessary for a violation" under the statute. Castillo, 776 F.3d at 267.

I assume, arguendo, that the New Jersey statute is divisible, setting forth three separate robbery crimes: (1) theft and inflicting injury; (2) theft and threatening injury; and (3) theft and committing or threatening to commit another first or second degree crime. See United State v. Knight, 705 F. App'x 58, 61(3d Cir. 2017) (unpublished) (concluding that the New Jersey robbery statute is divisible). Moreover, I can assume, without deciding, that both the first and second subsections of the New Jersey robbery statute would qualify as violent felonies under the force clause. See, e.g., United States v. Castleman, 134 S. Ct. 1405, 1414 (2014) (concluding that "the knowing and intentional causation of bodily injury necessarily involves the use of physical force"); United States v. Anderson, No. 15-578, 2016 WL 6595909, *3 (D.N.J. Nov. 7, 2016) (unpublished) (concluding that New Jersey robbery statute, which criminalizes "threatening" bodily injury also criminalizes "threatening" physical force against another). However, it is also clear that the third subsection does not require the use of violent force as there are many first or second degree crimes that do not involve violent force; for instance, it is a second-degree crime in New Jersey to operate a facility for the sale of stolen automobile parts,

N.J.S.A. § 2C:20-16(a).  United States v. Knight, No. 15-004, 2016 WL 223701, *7 (D.N.J. Jan. 19, 2016) (unpublished) (concluding that a conviction under the third subsection of the New Jersey robbery statute does not require the use of violent force).

Therefore, I am authorized to review Sheppard-approved documents in order to determine the specific subsection for which Hairston was convicted. Unfortunately, documents associated with this conviction from the Essex County Juvenile and Domestic Relations Court of New Jersey, which occurred in 1979, when Hairston was 14 years old and a juvenile, are no longer available. The government argues that because Hairston bears the burden of establishing a violation under § 2255, but has not provided the underlying documents supporting his state convictions, he is not entitled to relief. U.S. brief at 12-13, ECF No. 232. I disagree.

"The modified [categorical] approach ... acts not as an exception [to the categorical approach], but instead as a tool." Descamps, 133 S. Ct. at 2285. "It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." Id. at 2283. Where, as here, the "tool" of the modified categorical approach is unhelpful, the solution is not to refrain from analysis entirely. Rather, the court must simply continue its analysis under the categorical approach. See United States v. Torres-Miguel, 701 F.3d 165, 167 (4th Cir. 2012) (noting that "even if § 422(a) contained divisible categories of proscribed conduct," the court "could not apply the modified categorical approach here because the record contains no charging document, plea agreement, or other document approved in Shepard") (internal quotation marks omitted). It seems manifestly unjust to penalize Hairston for having prior convictions that occurred so long ago that the records are unavailable. The Fourth Circuit has indicated its unwillingness to preclude relief in § 2255 motions brought pursuant to Johnson II, when circumstances beyond a

defendant's control would otherwise curtail analysis. See generally Winston, 850 F.3d at 682 ("[N]othing in the law requires a [court] to specify which clause ... it relied upon in imposing a sentence. We will not penalize a movant for a court's discretionary choice not to specify under which clause of Section 924(e)(2)(B) an offense qualified as a violent felony") (internal quotation marks omitted); United States v. Batista, No. 5:09CR00037, 2017 WL 2841681, at *5 (W.D. Va. June 20, 2017) (unpublished) (concluding that the lack of Shepard documents did not preclude a defendant from challenging his ACCA sentence and instead undertaking a categorical approach analysis).

In examining the statute as a whole, I must consider what "the state conviction necessarily involved and not the facts underlying the case," and must presume that "the Conviction rested upon [nothing] more than the least of th[e] acts criminalized, before determining whether even those acts are encompassed by the generic federal offense." Moncrieffe v. Holder, 133 S. Ct. 1678, 1680 (2013) (internal quotation marks omitted). Without the help of the modified categorical approach, I am again left with the initial inquiry, whether all violations of N.J.S.A. § 2C:14-1 require the use of violent force. As explained above, not all convictions for New Jersey robbery require the use of violent force. Therefore, it is not categorically a violent felony and cannot be used to support an enhanced ACCA sentence.

Because theft from a person, New Jersey burglary, and New Jersey second-degree robbery—when analyzed under the categorical approach—do not qualify as violent felonies, Hairston no longer qualifies as an armed career criminal.

**D. Relief**

Because I sentenced Hairston to 180 months for his numerous § 922(g) convictions based on my determination that he qualified as an armed career criminal, he is entitled to be

resentenced.[2] I recognize that Hairston received a much reduced sentence due to the substantial assistance motion filed by the government. Nonetheless, because he received a sentence above the statutory maximum for his § 922(g) convictions, I must resentence him as to those counts.

### III.

Hairston no longer has three predicate convictions to support his armed career criminal designation. Accordingly, I will grant Hairston's § 2255 petition and deny the government's motion to dismiss.

**ENTER:** This 25th day of January, 2018.

s/Jackson L. Kiser<br>
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] Hairston recently has been released from the custody of the Bureau of Prisons. However, he remains on supervised release. Accordingly, he is still considered to be "in custody" for purposes of a § 2255 motion, and so his motion is not moot. United States v. Pregent, 190 F.3d 279, 283 (4th Cir. 1999). Accordingly, resentencing is appropriate.